# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:15-CR-3114 |
| vs. | |
| ALEXANDER CASTELLANO-BENITEZ, | MEMORANDUM AND ORDER |
| Defendant. | |

Following a 4-day jury trial, the defendant, Alexander Castellano-Benitez, was convicted of possessing with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine. The defendant now moves for a new trial pursuant to Fed. R. Crim. P. 33. For the reasons explained below, that motion will be denied.

## BACKGROUND

The defendant was arrested in September 2015 in a Hastings, Nebraska motel room. Upon searching the room, authorities found methamphetamine and various drug-related paraphernalia, including baggies, scissors, and a scale. Also arrested was Yulio Cervino-Hernandez, who had travelled to Hastings with the defendant from Tampa, Florida. Both men were charged with possessing with the intent to distribute 500 grams or more of methamphetamine. Cervino-Hernandez pled guilty to the offense, but the defendant proceeded to trial.

The government's theory of the case, generally speaking, was that the defendant had stolen the methamphetamine from a drug cartel in Texas. He then transported the drugs from Texas to Florida, and then from Florida to

Nebraska, for distribution. Along the way, the defendant recruited Cervino-Hernandez, who had agreed to drive the defendant (and the drugs) from Tampa to Hastings. The defendant admitted travelling with Cervino-Hernandez, but denied knowing about the methamphetamine.

The government's case relied in part on testimony from two cooperating witnesses. The first was Cervino-Hernandez, who largely confirmed the government's account. He testified, for example, about how the defendant had concealed the methamphetamine in the air vents and battery of his truck before leaving for Nebraska. He also described how the two men, upon arriving in Hastings, moved the drugs from the truck to their motel room. And he explained the defendant's role in an initial drug transaction, in which the men sold over an ounce of methamphetamine in or around Grand Island.

The government also called Yunior Flores-Veliz, who had pled guilty to a separate, but related, drug offense. He testified to phone conversations that he had with the defendant in October 2015, when the defendant was awaiting trial in the Saline County Jail. According to Flores-Veliz, the defendant, while incarcerated, encouraged him to transport drugs from Florida to Nebraska for distribution. Needing money, Flores-Veliz obliged—driving over 2 kilograms of methamphetamine from Tampa to Grand Island. Flores-Veliz was arrested with the drugs soon after arriving in the state, and he, too, was placed in the Saline County Jail.

The defense characterized this testimony as inconsistent and untrue. It suggested that the witnesses had a motive to lie based on the possibility that their own sentences would be reduced because of their cooperation. And it noted that both Cervino-Hernandez and Flores-Veliz were angry that the defendant had been released from the county jail in December 2015 to await trial, while they remained behind bars. So, the defense argued, the

cooperating witnesses might have coordinated their testimony while in the Saline County Jail in an effort to shift the blame to the defendant and implicate him.

One of the issues, then, was whether Cervino-Hernandez and Flores-Veliz had the opportunity and means to coordinate their testimony as the defense had suggested. The government claimed they did not, noting that the jail had intentionally segregated the men "to prevent them from coming up with a story." But the defense, through cross-examination, questioned the effectiveness of those efforts. It suggested that inmates, regardless of their classification, can communicate with each other through informal (and unauthorized) means. And when it posed that possibility at trial to the jail's administrator, Adam Drake, he largely agreed—noting that if inmates want to communicate, "I'm sure [they] can find a way."

But the defense did not present evidence that the two men were housed in the same unit or cell block. That was due in part, the defense now argues, to information it received from the government in pretrial discovery. Defense counsel had requested information about whether the defendants had been housed together, so in September 2016, the government emailed the defense a report it had compiled based on a review of Saline County's transportation and housing logs. Filing 174-1 at 1-3. That report concluded that Cervino-Hernandez and Flores-Veliz "were never housed or together at any time [during their incarceration] in the Saline County Jail." Filing 174-1 at 3. Then, in December, the government's attorney emailed defense counsel about possible stipulations for trial. Referring to the government's September report, the U.S. Attorney wrote:

> In addition to the stipulations we discussed on Monday . . . I was hoping you would be, since I went through the trouble to get the

information at your request, [willing] to stipulate to the agent testifying that he checked with the federal detention officials and as far as they could tell Yulio Cervino-Hernandez and [Yunior Flores-Veliz] *never crossed paths in their custody*.

Filing 170-1 at 2 (emphasis added).

However, it is now clear that the government's representations were inaccurate, or, at the least, incomplete. Indeed, while the witnesses were *not* housed together in Saline County, the government's September report, if carefully examined, would show that Cervino-Hernandez and Flores-Veliz were transported to a different facility in Dawson County in May and July 2016. And there is now evidence that the two witnesses, while incarcerated in Dawson County, were held in the same housing unit for 21 days. It is based on that evidence that the defendant moves for a new trial.

## ANALYSIS

The defendant contends that he is entitled to a new trial based on newly discovered evidence which, he claims, the government failed to turn over in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). *See* filing 170-2 at 4. That evidence, as summarized above, concerns the cooperating witnesses' 21-day stay at the Dawson County Jail, in which the two men were housed in the same unit without an official segregation order. *See* filing 170-1 at 7. According to the defense, the government's failure to provide that information impaired its ability to effectively cross-examine the government's witnesses. Filing 170-2 at 4.

Under *Brady* and its progeny, prosecutors have a duty to disclose to the defense all material evidence favorable to the accused, including impeachment and exculpatory evidence. *United States v. Robinson,* 809 F.3d

991, 996 (8th Cir. 2016). That duty extends not only to evidence of which a prosecutor is aware, but also to material favorable evidence known to the others acting on the government's behalf in the case. *Id.* To prove a *Brady* violation, the defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the issue of guilt or punishment. *United States v. Sturdivant,* 513 F.3d 795, 803 (8th Cir. 2008). The first and third requirements are at issue here.

*Suppression*

Evidence is suppressed for *Brady* purposes when it "was otherwise unavailable to the defendant, and the prosecution failed to disclose the evidence in time for the defendant to use it." *United States v. Santisteban,* 501 F.3d 873, 877 (8th Cir. 2007). Thus, if the defendant was aware of the evidence, or could have obtained it using reasonable diligence, then no *Brady* violation has occurred. *See, United States v. Walrath,* 324 F.3d 966, 969 (8th Cir. 2003); *United States v. Jones*, 160 F.3d 473, 489 (8th Cir. 1998).

Here, as explained above, the government did not expressly inform the defense that the two witnesses had been housed in the same unit in Dawson County. In fact, it had implied the opposite—suggesting in a December 2016 email that Cervino-Hernandez and Flores-Veliz had "never crossed paths" in federal custody.[1] Filing 170-1 at 2. But the government did send the defense a report which contained two critical pieces of information regarding the witnesses' pretrial incarceration in Saline County. The first was the report's

---

[1] The government explains its email as an unintended oversight that was "not done in an attempt to conceal the fact[s] . . . from [the] defense." Filing 174 at 3. And the defendant, for his part, does not suggest otherwise. The Court has no reason to suspect any intentional malfeasance on anyone's part.

express finding that the witnesses were "never housed or together at any time" in the facility. Filing 174-1 at 3. Neither party disputes that point, and it is not at issue here. The second, more subtle, piece of information was that both witnesses, at different points in their incarceration, had been transferred to the Dawson County Jail. Flores-Veliz was transferred on May 24, 2016—returning to Saline County on August 10—and Cervino-Hernandez on July 20, where he remained until at least August 24. Filing 174-1 at 2-3. So, as those dates indicate, both men were together in Dawson County for at least 21 days in July and August.

But neither the defense nor the government picked up on that point, and as a result, the Dawson County Jail's housing logs were never requested or reviewed. Rather, the parties proceeded to trial on the understanding that the witnesses, throughout their pretrial incarceration, had been intentionally separated by jail officials. And that has resulted in the current back-and-forth, in which each party is blaming the other for a lack of due diligence. Indeed, from the defense's perspective, the parties' collective failure to fully evaluate the pretrial discovery falls on the government, and otherwise resulted in a violation of his due process rights. But as the government contends, the defense was provided with information which, if properly reviewed, would have led to the very evidence that it now claims was suppressed. *See* filing 174 at 4.

There is no question that the government's pretrial representations were, at times, incomplete or inaccurate. But that does not absolve the fact that the defense, through reasonable diligence, could have uncovered the evidence underlying its motion. *See Johns v. Bowersox*, 203 F.3d 538, 546 (8th Cir. 2000); *see also United States v. Stuart*, 150 F.3d 935, 937 (8th Cir. 1998). Indeed, if the defense had cross-referenced the dates in the

government's report, it would have known that the witnesses were both housed in Dawson County in July and August 2016. And with that knowledge, the defense could have requested the facility's housing logs, as it had done with Saline County, which would show that both men had, in fact, been placed in the same housing unit.

But defense counsel did not do so. And as the Eighth Circuit has emphasized, "[w]hen defendants fail to recognize the exculpatory nature of documents to which they have access, *Brady* cannot be invoked to resuscitate their defense after conviction." *Stuart*, 150 F.3d at 937. Accordingly, the Court finds that the government did not suppress information pertaining to the cooperating witnesses' 21-day stay at the Dawson County Jail.

*Materiality*

But even if the Court were to find that the government had suppressed evidence, the "undisclosed" evidence was not material to the defendant's guilt. Evidence is "material" within the meaning of *Brady* where there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *United States v. Wright*, No. 16-3292, slip op. at 13 (8th Cir. Aug. 8, 2017) (internal quotation marks omitted). A reasonable probability of a different result is one in which the suppressed evidence "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (internal quotation marks omitted).

When determining the materiality of impeachment evidence, the undisclosed information cannot be viewed in isolation. *Wright*, No 16-3292 at 13. "Rather, [it] must be viewed in context, alongside the witness's testimony, in light of any other impeachment evidence, and in light of corroborating evidence that bears on the witness's credibility." *Id.* (citing *Pederson v. Fabian*, 491 F.3d 816, 826 (8th Cir. 2007)). Here, the defendant suggests that

the "undisclosed" information is material because it demonstrates that Cervino-Hernandez and Flores-Veliz, despite the government's representations, had the opportunity and means to coordinate their testimony before trial.

But that argument fails for several reasons. First, the Court is not convinced that there is a reasonable probability that the evidence, had it been presented to the jury, would have led to a different result. *See Jones*, 160 F.3d at 479. Indeed, at trial, the defendant argued that he did not know about the nearly 14 pounds of methamphetamine found in his shared motel room. But as he now acknowledges, some of those drugs were found in plain sight at the time of his arrest. *See*, filing 174 at 8; filing 170-2 at 2. And another 2 pounds of methamphetamine were found between the box spring and mattress of his bed, which the defendant inadvertently exposed to the police after they had entered the room. Filing 174 at 8. Also found was a digital scale which, authorities later determined, contained the defendant's fingerprints. The government's case agent testified that, given the amount of drugs found in the room, the scale was likely used to "measure out distribution-size quantities of methamphetamine." Filing 174 at 8. In other words, there was a compelling body of evidence undercutting the defendant's contention that he had been set up by the government's witnesses.

Second, even assuming the evidence was suppressed, the defense nonetheless had the evidence—albeit less evidence—to present its theory to the jury. To that end, defense counsel repeatedly told the jury that inmates, regardless of their classification, could communicate with each other while incarcerated in the Saline County Jail. It emphasized that point in its cross-examination of Saline County Jail administrator Adam Drake:

> Q: [So] notes get passed back and forth between inmates and separatees, correct?
>
> A: Can be.
>
> Q: So what you're saying is it's not a fail proof system that separatees are not going to communicate with other inmates.
>
> A: We try our best but nothing is foolproof. Nothing's guaranteed.
>
> Q: And over months of time, it would be feasible for inmates all on the same series of incident case to communicate with each other.
>
> A: May be possible.
>
> Q: Corroborate their stories.
>
> A: It may be possible.

The defense then reinforced the point during closing arguments, suggesting that the cooperating witnesses, despite the jail's segregation orders, had communicated while in custody. Thus, the "undisclosed" evidence, while undoubtedly beneficial, would not have "materially affected" the jury's interpretation of the cooperating witnesses' testimony. *Wright*, No 16-3292 at 14 (internal quotation marks omitted). In other words, the jury had the opportunity to evaluate the witnesses' credibility in light of the possibility that they could have coordinated their testimony. And the jury found the witnesses' testimony credible.

And finally, as the government correctly points out, the cooperating witnesses' testimony at trial was largely consistent with statements they had made following their arrest. *See* filing 174 at 7. In other words, there is no evidence that the 21 day overlap in Dawson County had any impact on the nature or substance of their respective accounts, as the defense now suggests.

Indeed, Flores-Veliz told authorities in January 2016 (5 months prior to his transfer to Dawson County) that the defendant had called from the Saline County Jail and encouraged him to transport drugs. Filing 174-2 at 3-4. Similarly, Cervino-Hernandez told police that the defendant, prior to their arrest, had arrived at his home in Florida with "lots of drugs" which he had "stolen from the Mexicans in Houston, Texas." Filing 174-4 at 2. He then told authorities, consistent with his trial testimony, that the defendant had concealed the drugs in his truck, which he then unloaded and began selling upon their arrival in Hastings. Filing 174 at 2-5. Thus, this consistency undermines any contention that the "undisclosed" evidence, if presented, would have led to a different result at trial. *Jones*, 160 F.3d at 479.

In sum, after careful review of the record, the Court concludes that the evidence, even assuming it was suppressed, was not material to the issue of guilt. Accordingly, the defendant's motion for a new trial based on newly-discovered housing logs will be denied.

*Additional Letters*

As a final matter, defense counsel has attached two letters which he received following the trial. *See* filing 170-1 at 4-5, 10. The first letter is from Angel Merida Herrera, who was incarcerated with Flores-Veliz and Cervino-Hernandez during their stay in Dawson County. According to Merida Herrera, the cooperating witnesses, while incarcerated, told him about their plan to set up the defendant so "they wouldn't get [as] many years in prison." Filing 170-1 at 4. That letter, the defense argues, confirms its theory regarding the alleged conspiracy in the Dawson County Jail. The second letter is from Cervino-Hernandez, who allegedly wrote the defendant after trial. In that letter, Cervino-Hernandez boasts of the defendant's conviction,

suggesting that it was his fault that the two had been arrested in the first place. *See* filing 170-1 at 10.

To the extent the defense suggests that these letters, standing alone, warrant a new trial, that motion will be denied. Indeed, Cervino-Hernandez's letter is completely devoid of relevant information, and would not, by any stretch, "produce an acquittal" if presented at a second trial. *United States v. Womack*, 191 F.3d 879, 886 (8th Cir. 1999). Similarly, Merida Herrera's letter, while potentially material to the issues involved, is not likely to result in a different outcome. *Id*. As noted above, there was sufficient evidence at trial, independent of the cooperating witnesses' testimony, to support the defendant's conviction. That evidence includes the location of the seized drugs within the motel room (some of which was in plain sight), testimony from law enforcement regarding the defendant's behavior just prior to arrest, and transcripts of the defendant's phone conversations with Flores-Veliz and others in the months following his arrest.

Accordingly, to the extent the defense moves for a new trial based on letters from Cervino-Hernandez and Merida Herrera, that motion will be denied.

IT IS ORDERED that the defendant's motion for a new trial (filing 170) is denied.

Dated this 10th day of August, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge